***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission MODIFIES and AFFIRMS the Opinion and Award of Deputy Commissioner Phillips.
 EVIDENTIARY RULING
At the Full Commission hearing, the Plaintiff filed a Motion to Receive Additional Evidence into the record in the form of vocational reports prepared by the vocational rehabilitation professional assigned to this case. The Full Commission hereby Denies Plaintiff's Motion to Receive Further Evidence.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The carrier on risk for the Employer/Defendant at the time of the Employee/Plaintiff's accident was Reliance Insurance Company. On October 03, 2001, the State of Pennsylvania ordered the liquidation of Reliance Insurance Company.
3. North Carolina Insurance Guaranty Association is now a successor in interest and parting in all workers' compensation claims pursuant to N.C. Gen. Stat. § 58-48.5.
4. The Employer/Employee relationship existed at all relevant times.
5. Employee/Plaintiff suffered an injury by accident within the course and scope of his employment on December 04, 1999, injuring his head, neck and hands.
6. The average weekly wage of Employee/Plaintiff is $675.00, resulting in a weekly compensation rate of $450.25.
7. Medical and vocational records of the Plaintiff are entered into evidence as Stipulated Exhibit #1.
8. The parties agree that the contested issues are as follows:
(a) Is treatment of the Employee/Plaintiff's cervical cyst compensable and, if so, is he entitled to surgical excision of the cyst as recommended by Dr. Spillman?
(b) Are Defendants responsible for payment of tuition/expenses for education and retraining in the field of photography as recommended by Charles R. Hook, Vocational Specialist with Goodwill Industries?
(c) Is the Employee/Plaintiff entitled to attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1, to penalties and/or sanctions?
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Employee/Plaintiff was employed as a truck driver with Employer/Defendant on December 04, 1999.
2. Employee/Plaintiff sustained a compensable injury by accident to his back on December 04, 1999 when he fell off the back of a tractor-trailer.
3. Defendants accepted liability for this injury.
4. Plaintiff came under the care of Dr. Victoria Carla Donato Neave and was eventually diagnosed with cervical radiculopathy with components above C6 C7; mild posterior body wedging at C5-6 and C6-7 without herniation or cervical central stenosis; spinal effusion at C5-6, C6-7 with anterior fixation.
5. On April 17, 2000, Plaintiff underwent an anterior cervical diskectomy and C5-6/C6-7 with bank bone and cognitive plate instrumentation in order to correct the condition.
6. In November of 2002, Dr. Neave diagnosed Plaintiff with bilateral carpal tunnel syndrome. Dr. Neave stated that, although the carpal tunnel syndrome was not caused by Plaintiff's injury on December 04, 1999, it could have been caused by the resulting physical therapy or from Plaintiff guarding his back after the injury.
7. Defendants accepted liability for the bilateral carpal tunnel syndrome and provided the recommended medical treatment.
8. On March 23, 2001 Plaintiff underwent a left carpal tunnel release. On May 11, 2001, Plaintiff underwent a right carpal tunnel release.
9. On September 29, 2001, Plaintiff underwent a functional capacity evaluation by Dr. Joseph Spillman. Dr. Spillman assigned Plaintiff a 25% permanent partial disability rating to his back.
10. On September 30, 2001, Dr. Neave concurred with Dr. Spillman's 25% permanent partial disability rating to Plaintiff's back and also assigned Plaintiff a 10% permanent partial disability rating to his left hand and a 5% permanent partial disability rating to his right hand.
11. Throughout the course of his treatment for his back injury, both Dr. Neave and Dr. Spillman noticed a subcutaneous mass on Plaintiff's back just to the right of T1-2.
12. Dr. Neave testified that she believes Plaintiff's subcutaneous mass is either a lipoma or an inclusion cyst, in which case she believes that the mass is unrelated to Plaintiff's workers' compensation injury. Dr. Neave also testified that, although it is unlikely, she could not, without further medical testing, completely rule out the possibility that Plaintiff's subcutaneous mass is a hematoma, in which case it would be related to his workers' compensation injury.
13. Dr. Spillman testified that he believes that Plaintiff's subcutaneous mass is an inclusion cyst and that there is a very low probability that it is related to his workers' compensation injury. Dr. Spillman also testified that, although it is unlikely, he could not, without further medical testing, completely rule out the possibility that Plaintiff's subcutaneous mass is a hematoma, in which case it would be related to his workers' compensation injury.
14. Defendants subsequently denied treatment for the subcutaneous mass.
15. The competent evidence in the record establishes that Plaintiff's subcutaneous mass is either a lipoma, a hematoma, or an inclusion cyst and that the Plaintiff requires further evaluation and diagnostic testing to determine the nature of the mass.
16. At the mediation of this matter, the parties entered into a proposed settlement agreement which included, as a condition of said agreement, vocational retraining of Plaintiff through the photography program at Randolph Community College. Plaintiff was to attend the photography program at Defendants' expense. The proposed agreement was thoroughly evaluated by the Defendant and after considering the program, Defendants determined that the photography program did not present the best opportunity of providing Plaintiff with suitable employment. Consequently, Defendants ultimately declined the proposed settlement agreement.
17. Greg Stewart, Department Chair for Photography and Art Design at Randolph Community College, testified that the photography program requires a fair amount of physical mobility and that kneeling or bending, stooping and even lying down in order to take a photograph is often required. He further testified that students of the photography program are required to carry equipments bags weighing up to 25 pounds.
18. Mr. Stewart further testified that, although the photography program provides a job placement service for its students, relatively few jobs result from the service. Rather, he testified that most students obtain jobs in photography through prior professional contacts in the field and that many go on to become self-employed. Finally, Mr. Stewart testified that the average starting salary for a graduate of the Randolph Community College photography program is $20,000.00 to $25,000.00 annually.
19. Mr. Charles Hook of Goodwill Industries of Central North Carolina testified that he provided a vocational assessment for Plaintiff. He testified that Plaintiff showed promise in the protective services field, as well as in fields involving plants, animals or art. Mr. Hook testified that he recommend that Plaintiff enroll in the photography program at Randolph Community College only upon Plaintiff's own expressed interest in the field of photography and that, but for Plaintiff's expressed interest, he would not have recommended the photography program. Rather, Mr. Hook testified that he would have recommended that Plaintiff seek employment in the protective services field, as a security guard.
20. The greater weight of the evidence establishes that vocational retraining through the Randolph Community College is unlikely to offer the plaintiff a suitable employment opportunity and he needs further vocational assessment to determine realistic job retraining and job placement.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Plaintiff is entitled to all medical treatment, including payment for an evaluation and diagnostic testing to determine the nature of Plaintiff's subcutaneous mass for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or lessen Plaintiff's period of disability. If the subcutaneous mass is determined to be related to Plaintiff's admittedly compensable injury by accident, Defendants shall pay for the treatment of the subcutaneous mass, including surgical excision, if necessary. N.C. Gen. Stat. §§ 97-25; 97-2(19).
2. The Plaintiff's vocational retraining through the Randolph Community College is deemed to be unlikely to provide Plaintiff with suitable employment and the Defendant's rejection of Plaintiff's proposed vocational retraining plan was reasonable. However, the Plaintiff shall undergo further vocational assessment to determine realistic job retraining for the Plaintiff. The Plaintiff shall comply with the defendant's job retraining efforts and any job placement efforts. Job retraining and job placement efforts shall be performed simultaneously. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. The Plaintiff is entitled to all medical treatment, including payment for an evaluation and diagnostic testing to determine the nature of Plaintiff's subcutaneous mass for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief, or lessen Plaintiff's period of disability. If the subcutaneous mass is determined to be related to Plaintiff's admittedly compensable injury by accident, Defendants shall pay for the treatment of the subcutaneous mass, including surgical excision, if necessary.
2. The Plaintiff's vocational retraining through the Randolph Community College is deemed to be unlikely to provide Plaintiff with suitable employment and the Defendant's rejection of Plaintiff's proposed vocational retraining plan was reasonable. However, the Plaintiff shall undergo a vocational assessment to determine realistic job retraining for the Plaintiff. The Plaintiff shall comply with the defendant's job retraining efforts and any job placement efforts. Job retraining and job placement efforts shall be performed simultaneously.
This the ___ day of January 2005.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
PTY:db